AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| TERRY JACKSEN, ERIC MENDONCA, and JACK DAVID POLLACK | ) ) ) ) ) | Case No. |
| Defendant(s) | | |

3 12 71335

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __December 19, 2012__ in the county of __Lake County__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| JACKSEN: 18 U.S.C. § 922(g) | Felon in Possession of Firearm |
| MENDONCA: 18 U.S.C. §§ 1951(a) and 2 | Aiding and Abetting a Hobbs Act Robbery Conspiracy |
| POLLACK: 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute a Controlled Substance. |
| | See Attached Penalty Sheet. |

This criminal complaint is based on these facts:

See attached AFFIDAVIT OF FBI SPECIAL AGENT DOUGLAS JACOBS.

Approved as to form _____ AUSA Randy Luskey

☑ Continued on the attached sheet.

_____
Complainant's signature

Douglas Jacobs, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/19/2012

_____
Judge's signature

City and state: San Francisco California    Honorable Nathanael Cousins, Magistrate Judge
*Printed name and title*

# United States v. Terry Jacksen, et al
## Penalty Sheet

**TERRY JACKSEN**

18 U.S.C. § 922(g) — Felon in Possession of Firearms
    Maximum term of 10 years imprisonment
    Maximum term of 3 years supervised release
    Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain to the defendant; or (c) twice the gross pecuniary loss inflicted on another
    Mandatory special assessment of $100

**ERIC MENDONCA**

18 U.S.C. §§ 1951(a) and 2 — Conspiracy to Commit Robbery Affecting Interstate Commerce
    Maximum term of 20 years imprisonment
    Maximum term of 3 years supervised release
    Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain to the defendant; or (c) twice the gross pecuniary loss inflicted on another
    Mandatory special assessment of $100

**JACK POLLACK**

21 U.S.C. § 841(a) and (b)(1)(C) — Possession with Intent to Distribute Controlled Substance
    Maximum term of 20 years' imprisonment
    Maximum term of 3 years' supervised release
    Maximum fine of $1,000,000
    Mandatory special assessment of $100

I, Douglas Jacobs, being first duly sworn, hereby depose and state as follows:

### A. Introduction and Agent Background

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), currently assigned to the San Francisco Division. I have been so employed since July 2012. As a Special Agent of the FBI, I am authorized to investigate violations of the laws of the United States, and I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States. My training consisted of nineteen weeks of FBI new agents classes during which I received instruction on various aspects of federal investigations. During my training to become a Special Agent of the FBI, I have studied a wide variety of criminal and national security investigations, including criminal enterprises, violent crime, terrorism, Internet fraud, extortion, and other federal crimes. I am currently assigned to Criminal Squad 8, which investigates violent street gangs, outlaw motorcycle gangs, and drug trafficking organizations in San Francisco and San Mateo counties.

2. Before becoming a Special Agent for the FBI, I spent five years working as a Police Officer for the City of Oakland, California. In this position, I was responsible for conducting preliminary investigations for in-progress or recently occurred crimes. These crimes included but were not limited to felony assault, weapons violations, narcotics trafficking, property crimes, and crimes against children. I participated in the execution of numerous arrest and search warrants, which resulted in the arrest and conviction of multiple subjects and the seizure of various types of evidence.

### B. Purpose of the Affidavit

3. I respectfully submit this Affidavit in support of a Criminal Complaint charging TERRY JACKSEN with violations of Title 18 U.S.C. § 922(g): Felon in Possession of a Firearm, charging ERIC MENDONCA with violations of Title 18 U.S.C. §§ 1951(a) and 2: Hobbs Act Robbery Conspiracy, and charging JACK DAVID POLLACK with violations of Title 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute Marijuana.

4. Because this Affidavit is submitted for the limited purpose of establishing probable cause for the arrests of JACKSEN, MENDONCA, and POLLACK, I have not included each and every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support the lawful arrests of the individuals listed in this Affidavit.

### C. There is Probable Cause to Believe that JACKSEN, MENDONCA and POLLACK Committed the Charged Offenses

5. The Lake County Sheriff's Office (LCSO) recently informed the FBI about a series of unsolved home invasion robberies occurring in and around Lake County, CA. The LCSO specifically referenced multiple home invasion robbery where the perpetrators had dressed in what appeared to be police uniforms to commit the robbery.

1

6. On October 4, 2012, a home invasion robbery occurred at 21576 Yankee Valley Road, Hidden Valley Lake, CA. During the home invasion robbery, one cellular telephone, two drills, and 48 marijuana plants grown in the backyard were stolen by the home invasion robbery crew. Each plant had about two pounds worth of marijuana with a total estimated worth of $96,000. LCSO deputies interviewed the victim resident at this address on November 27, 2012. The victim provided the following information:

    a. On October 4, 2012, a male subject (S1) was seen peeking through the window of the victim's residence. The victim went outside to speak with S1. S1 told the victim that he was there to respond to a service call for well water maintenance. The victim told S1 that the water worked fine and S1 left the house. As S1 walked away from the house, the victim followed S1 on foot down to the end of the driveway where there was a chain to prevent vehicle access. The victim then observed S1 getting into a white colored pick-up truck containing tools, tool cabinets, and metal pipes.

    b. Two to three hours later, two male adults (S2 and S3) knocked on the victim's front door. Both S2 and S3 were wearing what the victim described as brown colored Lake County Sheriff's Office button-up shirts with collars. One of the men carried a revolver in a holster in his waistband and the other was holding a shotgun. One of the subjects wore a white rancher style cowboy hat. The subjects told the victim that the ATF was in town and had observed marijuana on the victim's property and that they wanted to do a search of the interior of the house before their sergeant and others arrived. Three friends of the victim were present with him at his residence. The subjects conducted pat searches on the victim and his friends and then restrained them using handcuffs and zip ties.

    c. The subjects searched the victim's residence stating that they were looking for powders, other drugs, and money. The victim and his friends were separated into different parts of the house with the victim being placed in one of the upstairs bedrooms. As the victim looked outside the window, he saw a truck with a trailer coming up the driveway. He also saw another truck that he believed to be the same white truck that he had observed S1 getting into at his house earlier that day. One of the victim's friends saw a fourth subject that the home invasion robbery crew referred to as "sarge". The "sarge" appeared to be running the show. Before the subjects left the victim's house, they exchanged the handcuffs for zip ties and left the victim and his friends tied up. The victim later located two sets of sunglasses and a silver-colored star badge, outside in the backyard marijuana grow area.

    d. The day after the home invasion robbery, one of the victim's friends was talking to a security guard who works at Hidden Valley Lakes, the gated community where POLLACK lives. The victim's friend told the security guard about the home invasion robbery that occurred at the victim's residence. The security guard then commented that POLLACK had a well pump business, that POLLACK's truck matched the description of the white truck at the victim's residence, and that POLLACK was "always up to no good." The security guard

2

also said that there were two white trucks, one with a trailer, in front of POLLACK's residence on the day of the home invasion robbery. The same night of the home invasion robbery, while the security guard was driving around the Hidden Valley Lakes community, the white truck with the trailer drove in front of the security guard and it had a strong smell of marijuana.

e. After the victim's friend learned this information about POLLACK, the victim and his friend then searched for "JACK POLLACK" on the internet and found a photograph of POLLACK advertising "POLLACK AND SONS PUMPS." The victim also searched the Lake County Sheriff's Office website for booking photos and found a picture of POLLACK. The victim definitively recognized POLLACK as the same person who came to his residence for the well water maintenance (S1) before the home invasion robbery.

7. On December 13, 2012, during a meeting with FBI agents, the victim positively identified POLLACK from a "six pack" photo line-up as the purported well water maintenance worker who came to his door on October 4, 2012. In a separate photo line-up, the victim picked out a picture of another individual who the victim believed may have been present during the robbery. That was a picture of JACKSEN.

8. A confidential source (CHS) also informed the FBI that JACKSEN and MENDONCA, who lived together in a property located at 18795 Grange Road, Middletown, CA 95461, were part of a crew that had recently committed multiple home invasion robberies in and around Lake County, CA. Specifically, the CHS told the FBI about the most recent home invasion robbery that JACKSEN and his crew committed in early October 2012. JACKSEN told the CHS that JACKSEN and his crew had recently robbed this marijuana from a grow site. JACKSEN further described the robbery, telling the CHS that he and his crew had taken the marijuana from a nice house with access off of Hidden Valley Road. The CHS indicated that JACKSEN and the robbery crew had worn what appeared to be police uniforms during the robbery.

9. MENDONCA is a former police officer with the Petaluma Police Department (PPD). The FBI has confirmed this information through a retired PPD Officer. A records check also revealed that MENDONCA is a former deputy with the Lake County Sheriff's Office. Moreover, MENDONCA told the CHS that he was upset after one of the home invasion robberies because someone from the robbery crew had left MENDONCA's flashlight at the victim's property. MENDONCA stated that his flashlight was a police-issued flashlight. MENDONCA told the CHS that he was worried that the police may be able to trace the flashlight back to MENDONCA since it was part of MENDONCA's police gear and had a serial number on it.

10. JACKSEN has at least three prior felony convictions, including prior convictions for spousal abuse and possession of narcotics for sale.

11. **The Search of MENDONCA and JACKSEN's Residence:** Pursuant to a search warrant, on December 19, 2012, a team of FBI agents and local law-enforcement officers executed a search of the property located at 18795 Grange Road, Middletown,

3

CA 95461. Investigation has revealed that MENDONCA resides in the main residence on this property and that JACKSEN resides in a trailer on the property.

During the search, the search team recovered the following items of evidence from JACKSEN's trailer:

- One Winchester magnum 9422, .22 cal rifle.
- One Remington 870 magnum, 12 gage shotgun.
- One Savage model 3, 3.06 cal rifle.
- One Burgo revolver, .22 cal. This revolver was found inside of a holster. Both the revolver and the holster match the description of the revolver provided by the victim above.
- User quantity of methamphetamine.
- User quantity of marijuana in mason jars.
- A cellular telephone on JACKSEN's bed. During a search through the cellular telephone, agents uncovered a series of photographs depicting JACKSEN and two other individuals posing with shotguns, revolvers and other firearms in Lake County Sheriff's Office T-Shirts and uniforms and wearing an ATF hat. One of the pictures is time-stamped "October 4, 2012 at 4:08 p.m." The above-referenced robbery took place at approximately 6:00 p.m. on October 4, 2012. One picture also shows the individuals wearing a badge similar to the one that was left behind at the victim's house. Two of these pictures are attached to this Affidavit as Exhibits A and B.
- One white cowboy hat, rancher style.
- A pair of handcuffs. The engraving on the handcuffs said "LC Jail." LCSO deputies that worked with MENDONCA when he was on the force have informed the FBI that these "LC Jail" handcuffs were issued to all deputies when they started working for the LCSO.

During the search, the search team recovered the following items of evidence from MENDONCA's house:

- A set of handcuffs.
- A police style flashlight.
- At least eight rifles, shotguns and pistols.

12. **The Search of POLLACK's Residence**: Pursuant to a search warrant, on December 19, 2012, a team of FBI agents and local law-enforcement officers executed a search of the property located at 19280 Deer Hill Road, Hidden Valley Lake, CA. Investigation has revealed that POLLACK resides in the residence on this property. POLLACK also has an outstanding arrest warrant for Larceny, issued on November 26, 2012 through the Sonoma County Sheriff's Office. During the search, the search team recovered the following items of evidence from POLLACK's house:

- Twelve pounds of processed marijuana in a safe.
- Five pounds of processed marijuana in a wall locker in the garage.

4

- One pound of processed marijuana in a bag in a bedroom.
- Multiple digital scales.
- A ledger that resembles a pay/owe sheet.
- Many plastic bags.
- Multiple jars labeled with different strains of marijuana.
- An unknown number of pills of Fentanyl, a powerful synthetic opiate.
- At least two toy guns.

13. Based on my training, experience, research, and conversations with other law enforcement officers, I believe that the Winchester, Remington, Savage, and Burgo firearms recovered from JACKSEN's trailer were all manufactured out of state and, thus, travelled in interstate commerce.

### E. Conclusion

19. For the foregoing reasons, I respectfully submit that there is probable cause to believe that TERRY JACKSEN, who had previously been convicted of a felony, knowingly possessed firearms, in violation of Title 18 U.S.C.§ 922(g). I also submit that there is probable cause to believe that ERIC MENDONCA aided and abetted a Hobbs Act Robbery conspiracy, in violation of Title 18 U.S.C. §§ 1951(a) and 2. Finally, I submit that there is probable cause to believe that JACK DAVID POLLACK possessed with the intent to distribute approximately eighteen pounds of marijuana, in violation of Title 21 U.S.C. § 841(a)(1).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief,

DOUGLAS JACOBS
Special Agent, Federal Bureau of Investigation

Sworn to and subscribed to before me on this 19 day of December 2012.

THE HON. NATHANAEL COUSINS
United States Magistrate Judge

5



