United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 13-00006-2 WHA |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT MENDONCA'S MOTION FOR AN EVIDENTIARY HEARING; DENYING DEFENDANT JACKSEN'S MOTION FOR JOINDER** |
| ERIC MENDONCA, | |
| Defendant. | |

## INTRODUCTION

Defendant Eric Mendonca moves to suppress evidence seized pursuant to a search warrant on the ground that the affidavit in support of the government's search warrant misstated and omitted information. He requests an evidentiary hearing on whether false information was deliberately or recklessly included by the government in the search warrant affidavit and whether material information was deliberately or recklessly omitted from the affidavit. For the reasons stated below, defendant's motion for an evidentiary hearing is **GRANTED**.

## STATEMENT

This action arises out of a robbery in Lake County. The criminal complaint alleges that two men dressed in Lake County Sheriff's Office uniforms forced entry to a residence located on Yankee Valley Road in Hidden Valley, California, and robbed the victim of, *inter alia*, 48 marijuana plants with an estimated value of $96,000. As to defendant Eric Mendonca, a then-former Petaluma police officer and Lake County deputy sheriff, the complaint alleges that Mendonca aided and abetted a Hobbs Act robbery conspiracy. On January 8, 2013, a criminal

1 indictment was filed against Mendonca, Terry Jacksen, Jack Pollack, and Michael Puckett. In
2 addition to charges stemming from the robbery and impersonation of an officer, the indictment
3 charges defendants with conspiracy to distribute or possess with intent to distribute marijuana and
4 use or possession of a firearm in furtherance of a crime of violence and a drug-trafficking crime.
5 Jacksen and Pollack are further charged with one count each of felon in possession of a firearm;
6 Pollack alone is charged with possession with intent to distribute methamphetamine and
7 marijuana in violation of 21 U.S.C. 841(a).

Mendonca has filed a motion for a *Franks* evidentiary hearing and to suppress evidence seized pursuant to a search warrant. Co-defendant Terry Jacksen has filed a motion for joinder in the motion to suppress.

On December 19, 2012, FBI agents and local law-enforcement officers executed a search of a property located at Grange Road in Middletown pursuant to a warrant (Dkt. No. 1 ¶ 11). Mendonca lived in the main residence of the property while Jacksen lived in a trailer on the property (*ibid.*). From Mendonca's house, the search team seized a set of handcuffs, a police style flashlight, and a number of firearms. From Jacksen's trailer, the search team seized a number of firearms, "user quantities" of methamphetamine and marijuana, a pair of handcuffs that said "LC Jail", a white cowboy hat, and a cellular telephone with photographs depicting Jacksen and two other individuals posing with firearms in Lake County Sheriff's Office clothing. That same day, Pollack's residence was also searched pursuant to a search warrant. The search of Pollack's residence is not challenged in this motion.

**1.    THE SEARCH WARRANT.**

The search warrant for both Mendonca's property at Grange Road and Pollack's residence was issued by Magistrate Judge Nathanael Cousins on December 17, 2012, based on the affidavit of FBI Special Agent Vivien Moon. Agent Moon's belief that Mendonca's property contained the evidence sought was supported largely by information from a confidential informant.

Agent Moon's affidavit stated that, in November 2012, FBI agents and officers from the FBI Safe Streets Task Force met with a confidential informant who claimed to have information about robberies where the perpetrators wore what appeared to be police uniforms, so-called

2

"home invasion" robberies. The informant stated that she was in a "close relationship" with defendant Jacksen and had "direct and frequent contact and communication" with him. According to the informant, Jacksen lived in a trailer on Mendonca's property at Grange Road. The property also included Mendonca's residence, a barn, a slaughterhouse, and other outbuildings. The informant stated that Jacksen and others were "part of a crew that had recently committed multiple home invasion robberies in and around Lake County." Jacksen told the informant specifically about the most recent of such robberies that Jacksen and his crew had committed in early October 2012. Jacksen told the informant this while the informant was "helping Jacksen and Mendonca trim some marijuana" in the barn. Details reported by the informant about the robbery that Jacksen related to her included that: (1) the marijuana they were trimming had been taken from a "nice house with access off of Hidden Valley Road," (2) two individuals named "Jack" and "Donny" had participated in the October 2012 robbery with him, and (3) Jacksen conducted surveillance on the victim's property following the robbery to ensure that they had taken all the marijuana plants.

Around October 2012, Mendonca and Jacksen showed the confidential informant a video recording that Jacksen and his crew had recorded during one of the home invasion robberies. The video depicted Jacksen and others wearing what appeared to be police uniforms. The informant viewed the video while she was in Mendonca's residence.

The confidential informant stated that the video of the robbery was stored in a vault in Mendonca's barn. She had also observed marijuana, pills, and firearms stored inside the vault. She further reported that "loot" from the robberies, firearms used in the furtherance of those robberies, and drugs for sale were stored in Mendonca's residence, Jacksen's trailer, and in vehicles and outbuildings on the property. The informant had also observed police uniforms and gear in Mendonca's residence.

According to the affidavit, Mendonca told the confidential informant that he was upset after one of the home invasion robberies because someone from the robbery crew had left Mendonca's flashlight at the victim's property. Mendonca was concerned the serial number could be traced back to him, as it had been part of his police gear.

3

## 2. THE CONFIDENTIAL INFORMANT'S STATEMENT AND INFORMATION OMITTED FROM THE AFFIDAVIT.

Mendonca contends that the affidavit omitted certain information bearing on the reliability of the informant and that the affidavit misreported at least one statement from the informant. Counsel for Mendonca and Mendonca's wife each filed declarations under seal identifying the informant by name and date of birth. The government has not confirmed the informant's identity. The government has, however, provided information to defendants regarding the informant's criminal record, the benefit received for cooperation, and other discovery relating to the informant's statements to investigating agents. Mendonca also contends that the confidential informant was a drug addict around at least October 2012, the time during which Jacksen told the informant about the home invasion robbery. None of this information was included in the affidavit provided to the magistrate judge.

The government produced to defendants FBI 302 reports regarding interviews with the confidential informant, which Mendonca argues establish that Agent Moon's affidavit contained material falsehoods. As described above, the affidavit reported that *Mendonca* told the informant that he was concerned that his flashlight might have been left behind by a member of the home invasion robbery crew. The FBI report, however, stated that the informant reported that *Jacksen* expressed concern about the flashlight:

> Source advised that during one of the robberies that a flashlight was left mistakenly behind at the location of the robbery. The flashlight belongs to Mendonca and *there was concern expressed by Jackson* [sic] *that the flashlight could possibly be traced by serial number to Mendonca. This was a concern because this particular flashlight was assigned to Mendonca while he was employed by a law enforcement officer in the past.*

(Second Falk Decl. Exh. B) (emphasis added). Mendonca argues that the affidavit's statement that Mendonca himself had expressed concern about the flashlight was critical to the magistrate judge's finding of probable cause because, other than an "amorphous statement" regarding storing loot from the robberies on Mendonca's property, no other evidence was presented in the affidavit that Mendonca participated or assisted in the alleged robberies.

In opposition to Mendonca's motion to suppress, the government submitted a declaration from Officer John McCutcheon, a federal agent and officer assigned to the FBI Safe Streets Task

4

Force. Officer McCutcheon's declaration states that on November 15, 2012, Officer McCutcheon and another special agent met with the confidential informant in a Sonoma County detention facility. The informant had recently been arrested for possession of a small amount of heroin and an outstanding warrant for shoplifting. She was charged with possession of a controlled substance. The outstanding warrant arose from an incident in July 2012 where the informant had been arrested for shoplifting $92.88 worth of merchandise.

As consideration for her cooperation in this matter, the informant was released from custody a day early and the open drug charge against her was dismissed. Officer McCutcheon did not run the informant's rap sheet until after the search warrant was issued. The rap sheet established that the informant had been convicted of petty theft in May 2012.

The government also submitted a declaration from the search warrant affiant, Agent Moon. She states that she did not check the criminal history of the informant prior to preparing the search warrant in this case. Agent Moon did not pull the informant's rap sheet until after the issuance of the search warrant, and was thus not aware of the informant's May 2012 petty theft conviction or July 2012 shoplifting conviction until that time.

**ANALYSIS**

Pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), "[a] defendant is entitled to an evidentiary hearing on the validity of the affidavit underlying a search warrant if the defendant can make a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information." *United States v. Reeves,* 210 F.3d 1041, 1044 (9th Cir. 2000). Our court of appeals has held that there are five requirements that must be satisfied before a defendant is entitled to a hearing under *Franks*:

> (1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; (5) the challenged statements must be necessary to find probable cause.

*United States v. Perdomo*, 800 F.2d 916, 920 (9th Cir. 1986).

Where the issue is the omission of relevant facts, a court must review the affidavit with the omitted facts included. If an informant's "history of criminal acts involving dishonesty renders his/her statements unworthy of belief, probable cause must be analyzed without those statements." *Reeves*, 210 F.3d at 1044 (citing *United States v. Hall*, 113 F.3d 157, 159 (9th Cir. 1997)).

1.  **SUBSTANTIAL SHOWING OF FALSITY.**

The government posits that information regarding the informant's prior criminal history was not intentionally or recklessly omitted from Agent Moon's affidavit. Agent Moon avers that this affidavit was the first she had ever prepared and that she was unaware that information such as criminal history and benefits received should be included in the affidavit. She further states that she was unaware of the informant's May 2012 petty theft conviction and July 2012 shoplifting conviction. Agent Moon does not state, however, that she was unaware of the benefit received by the informant for cooperation.[*] Nor does Agent Moon state that she was unaware of the fact that the informant gave information to federal agents while in custody pursuant to an arrest for heroin possession. Additionally, Agent Moon's affidavit is contradicted by the FBI 302 report, in which the confidential informant states that Jacksen, not Mendonca, expressed concern about leaving Mendonca's flashlight at the scene of a robbery.

The government contends that Mendonca has not furnished proof that Agent Moon withheld or misrepresented information in bad faith or with an intent to deceive. At this stage, however, "clear proof of deliberate or reckless omission is not required." *Stanert*, 762 F.2d at 781. Defendant has specifically identified the portion of the affidavit that he contends were false. He has also identified specific information regarding the informant's criminal history, drug use, and benefit received that he contends constitute material information that was omitted from the affidavit. In this instance, this is sufficient to make the necessary substantial preliminary showing.

---

[*] Although the government does not provide the exact date, the informant was released from custody prior to December 17, the date on which Agent Moon signed the affidavit.

6

The government contends that Mendonca's preliminary showing that the affidavit contained reckless or deliberate falsities or omissions is insufficient to require a *Franks* hearing. A defendant challenging an affidavit ordinarily must also show that the affidavit purged of falsities and supplemented by omissions would not be sufficient to support a finding of probable cause. *See Franks*, 438 U.S. at 171-72. Notwithstanding the foregoing, defendant Mendonca has made a substantial showing that Agent Moon misrepresented the facts about what the confidential informant reported to investigating agents, and omitted significant information regarding the informant's criminal history and motivations for cooperation. As noted above, the informant's statements were critical to most, if not all, of the allegations against defendant Mendonca in Agent Moon's affidavit. This order therefore holds that in this instance an evidentiary hearing must be held prior to deciding whether the affidavit purged of alleged falsities and supplemented by alleged omissions would be sufficient to support a finding of probable cause.

### 2. JACKSEN'S MOTION FOR JOINDER.

Defendant Jacksen has filed a motion for joinder in Mendonca's motion, seeking to suppress all items seized at the trailer on Mendonca's property. The search and arrest of Jacksen at his trailer on December 19, 2012, was executed pursuant to the search warrant challenged in Mendonca's motion. Citing *Minnesota v. Olson*, 495 U.S. 91 (1990), Jacksen contends that he has standing to challenge the search warrant "since he was, at a minimum, an overnight guest staying in the residential trailer on the property which was specifically named in the warrant." Jacksen's counsel filed a declaration stating that the trailer is described in the complaint as "containing a bed for sleeping and is where Mr. Jacksen was arrested in the early morning hours on that date" and is described as a resident of the trailer in the affidavits supporting the complaint and search warrant. Jacksen has not submitted any sworn declarations or other evidence establishing that he was living at the trailer or establishing his status as an overnight guest. Moreover, as Jacksen's counsel admitted at the hearing on February 12, the issues that might arise in relation to a motion to suppress the search of Jacksen's trailer are likely to differ from those raised in Mendonca's motion. Accordingly, the motion for joinder is **DENIED**.

**CONCLUSION**

For the foregoing reasons, defendant Mendonca's motion for a *Franks* evidentiary hearing is **GRANTED**. The hearing is hereby scheduled for **MARCH 5 AT 7:30 A.M.** Pursuant to Mendonca's request, a further status conference on this matter is hereby set for **FEBRUARY 20 AT 2:00 P.M.**

**IT IS SO ORDERED.**

Dated: February 19, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE